IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OLAYINKA OYE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No: |
| | ) |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Now comes the Plaintiff, OLAYINKA OYE, by her attorneys, MARK D. DEBOFSKY and DeBofsky Sherman Casciari Reynolds, P.C., and complaining against the Defendant, HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, she states:

### *Jurisdiction and Venue*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"); and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan, which, in this case, consists of a group long-term disability insurance policy underwritten and administered by Hartford Life and Accident Insurance Company ("Hartford") for the benefit of employees of PricewaterhouseCoopers LLP (Policy No. GLT 673035), which includes Plaintiff. Additionally, this action may be brought before this court pursuant to 28 U.S.C. 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

2. The ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for administrative

or internal appeal of benefit denials. Those avenues of appeal have been exhausted.

3. Venue is proper in this district since Plaintiff worked in this district, participated in the employee benefit plan at issue within this district, and many of the events and occurrences relevant to this matter occurred within this district. 29 U.S.C. § 1132(e)(2); 28 U.S.C. § 1391.

### *Nature of the Action*

4. This is a claim seeking reinstatement of long-term disability insurance payments under Policy GLT 673035 (Insured ID 9002014477) retroactive to September 28, 2020. A true and accurate copy of the Certificate of Coverage is attached hereto as Exhibit "A." This action is brought pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)). Plaintiff also seeks to recover attorneys' fees pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g) and prejudgment interest pursuant to either 29 U.S.C. §§ 1132(a)(1)(B) of 1132(a)(3).

### *The Parties*

5. Plaintiff, Olayinka Oye ("Oye or "Plaintiff"), is currently 49 years old (born in 1971) is and was at the time of benefit denial a citizen and resident of the State of Illinois.

6. Defendant, Hartford, was at all times relevant hereto doing business throughout the United States and within the Northern District of Illinois.

### *Statement of Facts*

7. Prior to the onset of a period of disability in 2017, Plaintiff, who holds both a law degree and a master's degree in business administration, was employed at the level of "Director" at Pricewaterhouse Coopers, LLP ("PwC") as an operations leader, a high level position in management consulting that necessitated long hours of work involving complex business issues, extensive business travel, and entailed responsibilities in Project and Finance Control; Commercialization and Go to Market Approach; and in Business Administration. Oye began

working at PwC in 2005 and had a solid record of successful performance and promotion throughout her tenure with that organization. Oye became disabled in 2017 due to fibromyalgia and other conditions.

8. Shortly after she ceased working, Oye applied for short-term and then long-term disability ("LTD") insurance benefits from Hartford. Although Hartford denied Plaintiff's application for long-term disability benefits, Oye appealed the denial to Hartford and was ultimately successful in overturning Hartford's initial benefit denial. Hartford ultimately agreed that Oye met the following Policy conditions; and medical consultants retained by Hartford further acknowledged that Plaintiff was disabled due to her physical impairments irrespective of any co-morbid conditions:

> **Disability or Disabled** means that during the Elimination Period and for the next 60 months You are prevented by:
>
> 1. accidental bodily injury;
> 2. sickness;
> 3. Mental Illness;
> 4. Substance Abuse; or
> 5. pregnancy,
>
> from performing one or more of the Essential Duties of Your Occupation, and as a result Your Current Monthly Earnings are no more than 80% of Your Indexed Pre-disability Earnings.
>
> After that, You must be so prevented from performing one or more of the Essential Duties of Any Occupation.
>
> Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation does not alone mean that You are Disabled.
>
> **Essential Duty** means a duty that:
>
> 1. is substantial, not incidental;
> 2. is fundamental or inherent to the occupation; and
> can not be reasonably omitted or changed.

> To be at work for the number of hours in Your regularly scheduled workweek is also an Essential Duty.
>
> **Your Occupation,** if used in this Booklet-certificate, means Your occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location.

9. As a result of Hartford's benefit approval, Oye began receiving monthly long-term disability benefits commencing in September 2017 at a rate of $8,000.00 per month less benefit offsets. In addition to seeking benefits from Hartford, Oye concurrently applied to receive Social Security disability benefits, and that application was successful, resulting in payment of Social Security disability insurance benefits that continue being paid monthly. On account of the Social Security award and coordination of benefits between long-term disability and Social Security payments, Hartford paid Oye a net benefit of $6,217.00 per month, which continued without interruption thereafter.

10. Despite the chronicity of Plaintiff's impairments, and in the absence of material improvement that would enable her to return to work in any capacity whatsoever, Hartford terminated Plaintiff's benefits as of September 28, 2020 even though the benefits were scheduled to be paid through November 2036 when Plaintiff reaches retirement age so long as Oye remained disabled as defined in the Policy.

11. Hartford's denial was based on a file review performed by N. Nicole Barry, M.D., a frequently retained medical consultant who never examined Plaintiff or spoke with her physicians. Dr. Barry conducted a selective file review that disregarded relevant records and reports, including reports from medical consultants retained by Hartford, that confirmed the chronic nature of Plaintiff's impairments and established that her condition remained at a disabling level of servity. Dr. Barry's report also implies that she does not believe fibromyalgia can ever be

disabling. Moreover, Dr. Barry simply repeated language she had used in other reports submitted in other disability benefit claims rather than conducting an individualized assessment of Plaintiff's claim.

12. Plaintiff challenged Hartford's determination by submitting a detailed claim appeal pursuant to 29 U.S.C. § 1133 and 29 C.F.R. § 2560.603-1, which was supported by exhaustive medical and vocational evidence proving that she continued to meet the Policy's definition of "disability." For example, records from the Northwestern University Department of Rheumatology utilized standardized measures to assess Plaintiff's functionality; and those test results confirmed Plaintiff's condition remained at a level of severity that was consistent with disability. Further confirmation of the severity of Plaintiff's impairments was provided by her primary care physician who not only completed forms and supplied records at Hartford's behalf, but also made himself available to be interviewed by Hartford's medical consultants, only to have his opinions ignored. In addition to providing such evidence, Plaintiff also established that Dr. Barry's report was biased, uninformed, selective in her review of the evidence, gave no consideration to Plaintiff's occupation, and was inconsistent with the weight of medical opinion and multiple court rulings addressing fibromyalgia, and repeated language she had used in other matters in which she was hired. Moreover, Plaintiff supplied witness reports attesting to her incapacity and also challenged Hartford's reliance on surveillance obtained two years earlier that showed no activity that was inconsistent with Plaintiff's claimed disability.

13. Despite the submission of evidence conclusively establishing Oye's disability and rebutting the ostensible grounds for terminating benefits, and notwithstanding ERISA's obligation to provide claimants with a "full and fair review" as required by 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1 and to apply fiduciary standards in adjudicating Plaintiff's claim in accordance with

5

29 U.S.C. § 1104(a)(1), Hartford "doubled down" and hired a new panel of physicians – Robert Clinton, M.D., Shelley Singh, M.D., and Daniel Fung, M.D., all of whom are frequently retained by insurers because they have a predilection to write reports that can be used to support claim denials. All three of those doctors authored reports that contained opinions which were irrelevant, contrary to established medical opinion, selective in their review of the medical evidence, and purely speculative in assessing functional capacity. Instead of fully and fairly assessing Oye's claim, Hartford adopted an adversarial posture that made a mockery of ERISA's claim review process set forth in 29 C.F.R. §§ 2560.503-1(h)(2)(iv) and (h)(4), which, among other obligations, requires plan administrators to "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." Hartford all but ignored Plaintiff's appeal; and through its medical consultants, repeatedly misstated or ignored crucial evidence. For example, Dr. Clinton reported that he only considered conditions other than fibromyalgia even though Plaintiff's claim was based on fibromyalgia. Dr. Fung based his opinion that Plaintiff was no longer disabled on the fallacy that an absence of musculoskeletal and neurological abnormalities meant she could not be disabled, even though it is well-established in medicine as well as in legal precedents that such abnormalities are not found with fibromyalgia. And Dr. Singh, who is ostensibly a rheumatologist, maintained that fibromyalgia is not a rheumatologic condition even though the diagnostic criteria for fibromyalgia were developed by the American College of Rheumatology and fibromyalgia is an established rheumatologic condition. Moreover, even though the disability determination was to have been based on Oye's ability to perform the duties of her highly demanding occupation, neither Hartford, nor its medical consultants, took Plaintiff's occupation into consideration, nor did they

6

perform a meaningful occupational analysis and explain how an individual suffering from constant and severe debilitating pain and fatigue could perform an occupation with significant cognitive and intellectual demands and which required near-constant travel. Finally, even though Plaintiff is receiving Social Security disability benefits, which signify her inability to perform "any substantial gainful activity" (42 U.S.C. § 423(d)(1)(A)), no explanation was offered as to the contradiction between Hartford's conclusion and the Social Security determination. In short, Hartford committed a lengthy litany of ERISA procedural violations, which were no doubt the product of bias, self-interest, and the structural conflict of interest inherent in Hartford's dual role as the party deciding entitlement to benefits and the source of payment of benefits. As a result, Hartford issued a rubber stamp affirmance of the denial of benefits that failed to meet the requirements of a full and fair review and was so grossly biased and inaccurate that it could not be ascribed to a difference of opinion or the exercise of discretionary authority.

14. As a direct result of Hartford's wholesale denial of Plaintiff's right to a full and fair review of the termination of her disability benefits, which has caused severe financial hardship to the Plaintiff, and Hartford's issuance of a determination that was contrary to the evidence and based on adversarial behavior, bias, misrepresentations, and logical fallacies, all required pre-litigation appeals have been exhausted and this matter is now ripe for adjudication.

15. As a further direct and proximate result of the foregoing, Defendant's actions in denying Plaintiff a full and fair review forfeited any right to judicial deference and discretionary authority that it may have otherwise been entitled to receive.

16. Since the date of onset of her disability, Oye has been and remains unable to perform the material and substantial duties of her regular occupation due to her impairments; and since her impairments are chronic and have not improved in any material respect despite intensive

treatment, there does not appear to be any reasonable likelihood of medical improvement at any time prior to the expiration date of the scheduled benefit payments. Consequently, Plaintiff is entitled to a reinstatement her benefits with payment of all benefits in arrears with interest, along with continuation of payments so long as she meets the Policy's definition of "disabled."

### *Relief Sought*

WHEREFORE, Plaintiff prays for the following relief:

A.  That the court enter judgment in Plaintiff's favor and against the Defendant and that the court order the Defendant to reinstate Plaintiff's long-term disability benefits and pay benefits owed in arrears since September 28, 2020, as well as issue ongoing benefits conditioned upon Plaintiff continuing to meet the Policy's terms and conditions;

B.  That the court award Plaintiff prejudgment interest on all overdue benefit payments;

C.  That the Court award Plaintiff attorney's fees pursuant to 29 U.S.C. § 1132(g); and

D.  That Plaintiff be awarded any and all other contractual and/or equitable relief to which she may be entitled, as well as the costs of suit.

July 14, 2021                                                                                       Respectfully Submitted,

                                                                                                    /s/ *Mark D. DeBofsky*
                                                                                                    One of the Plaintiff's Attorneys

Mark D. DeBofsky (IL ARDC #3127892)
DeBofsky Sherman Casciari Reynolds P.C.
150 N. Wacker Dr., Suite 1925
Chicago, IL 60606
(312) 235-4880 (phone)
(312) 929-0309 (fax)